IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES O. WARNER,

    *Plaintiff*,

    v.

CELLCO PARTNERSHIP d/b/a/
VERIZON WIRELESS, *et al.*,

    *Defendant*.

Civil No. ELH-13-03100

**MEMORANDUM OPINION**

James O. Warner, a former employee of Cellco Partnership, doing business as Verizon
Wireless ("VZW"), filed suit on October 18, 2013, against VZW and two of his former
supervisors, Joseph Angel and Laura Salmon. ECF 1, Complaint. In an Amended Complaint
filed on February 18, 2014 (ECF 20), plaintiff added Janet Imwold, another VZW employee, as a
defendant. Mr. Warner, who is African American, alleges that he was terminated in July 2013
based on his race, in violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, *et seq.*, as
amended; the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601, *et seq.*, as amended
("FMLA"); the Maryland Wage Payment and Collection Law, Md. Code (2008 Repl. Vol.),
§§ 3–501, *et seq.* of the Labor and Employment Article ("L.E."); and Maryland tort law. ECF
20. VZW filed an Answer to the Amended Complaint on April 11, 2014. ECF 31. The parties
are still engaged in discovery.[1]

---

[1] This case was originally assigned to Judge George L. Russell, III. It was reassigned to
me on February 19, 2015. *See* Docket.

    As discussed below, at the request of the parties Judge Russell has twice stayed this case
(ECF 40, Order; ECF 52, Order), and I twice extended the discovery deadlines (ECF 77, Order;
ECF 82, Order). By Order of September 18, 2015, I also granted a Joint Motion to Modify the

On September 14, 2015, defendants filed a Motion for Leave to File an Amended Answer (ECF 79, "Motion"). They seek "to add one additional affirmative defense under the after-acquired evidence doctrine" (*id.* ¶ 1), asserting "that Plaintiff's claims are barred and/or his recovery of damages is precluded under the after-acquired evidence doctrine . . . ." *Id.* ¶ 5. In their view, such an amendment is in the "interests of justice and presents no undue prejudice to the Plaintiff." *Id.*

Defendants explain: "During Plaintiff's deposition [on August 28, 2015], Plaintiff testified regarding the circumstances of his application for employment with Defendant VZW." *Id.* ¶ 4; *see id.* ¶ 3. Moreover, defendants maintain, *id.* ¶ 4:

> Plaintiff provided Defendant VZW false information relating to his prior employment when applying for employment with Defendant VZW. Had Defendant been aware of Plaintiff's misrepresentations at the time Plaintiff applied for employment, Defendant would not have hired Plaintiff. If Defendant had become aware of Plaintiff's misrepresentations after Plaintiff had been hired, Plaintiff's employment would have been terminated for providing false information during the hiring process.

Mr. Warner opposes the Motion (ECF 85, "Opposition") and appended six exhibits to his Opposition. ECF 85-1 through ECF 85-6. Mr. Warner contends, ECF 85 at 1:

> The Court should not grant Defendants' motion because: (1) Defendants unduly delayed in seeking to amend their Answer; (2) allowing the amendment after the close of discovery will prejudice Plaintiff; (3) Defendants' misrepresentations to the Court in moving to amend and misrepresentations of the record evince Defendants' bad faith; and (4) the amendment would be futile.

Defendants have replied (ECF 89, "Reply") and have appended numerous exhibits to their Reply. ECF 89-1 through ECF 89-11. They submit that they "have not delayed in filing their Motion for Leave to Amend without good cause, and the amendment would not result in

---

Scheduling Order (ECF 81), and extended the deadline to submit discovery motions to the Court. ECF 82. On September 28, 2015, the parties filed motions to compel (ECF 83, defendants; ECF 84, plaintiff), which are pending before Magistrate Judge Stephanie A. Gallagher.

undue prejudice to the Plaintiff, reward bad faith on the part of the Defendants, and is not futile." ECF 89 at 1-2, Reply.

The Motion has been fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I will grant defendants' Motion.

## I. Factual and Procedural Background

In order to analyze the Motion, it is important to set out the procedural history in some detail. As noted, Mr. Warner filed suit on October 18, 2013. ECF 1, Complaint. The original defendants filed their Answer on December 24, 2013. ECF 9. The Court issued a Scheduling Order on December 30, 2013. ECF 12. Defendants maintain that they "served Requests for Production of Documents and Interrogatories on Plaintiff via U.S. Mail on January 6, 2014." ECF 30 at 1, Defendants' Response to Plaintiff's Motion to Stay Proceedings. Following a telephone conference on January 13, 2014 (ECF 14), the Court referred the parties to a magistrate judge for mediation. ECF 15.

Plaintiff's counsel, Sundeep Hora, wrote an email to defense counsel, Emmett F. McGee, on February 11, 2014, seeking "additional time to respond to Defendants' discovery requests." ECF 30-1 at 1-2. Mr. Hora said: "I anticipate being able to provide our responses by February 21st." *Id.* at 2. Following further email correspondence (*see id.* at 1) Mr. McGee responded on February 12, 2014: "I believe Plaintiff's discovery responses are past due, and that you did not timely request an extension. But as long as Mr. Warner responds completely to the discovery requests, I don't foresee a problem." *Id.* at 1.

On February 18, 2014, the Court granted a consent motion for leave to file an Amended Complaint. (ECF 18, Consent Motion; ECF 19, Order). The Amended Complaint (ECF 20)

added one new defendant and one new claim, under the Maryland Wage Payment and Collection Law, L.E. §§ 3–501, *et seq.*

On February 24, 2014, the parties filed a Joint Motion to Modify Scheduling Order (ECF 21), which sought "to postpone all deadlines for a one-month period in order to focus [the parties'] efforts on settlement discussions without incurring any additional fees and costs associated with discovery." *Id.* at 1. By Order of February 24, 2014 (ECF 22), Judge Russell granted that request.

Mr. Hora filed an Amended Motion to Withdraw on February 27, 2014 (ECF 24), which the Court granted by Order of March 4, 2014. ECF 25. On March 7, 2014, Mr. McGee wrote to Mr. Warner, who was then self-represented, and asked Mr. Warner "to arrange a time for a telephone call or a meeting . . . to discuss this case." ECF 89-3 at 1. Mr. McGee also said: "If the case is not going to be resolved, then we need to discuss some logistics regarding proceeding with the case, including obtaining your responses to the Defendants' discovery requests and also scheduling your deposition." *Id.*

In a letter dated April 4, 2014, Mr. Warner wrote to the Court "request[ing] to put a hold on any further proceedings for 45 – 60 days," because his search for new counsel had been unsuccessful. ECF 29. Defendants consented to a stay for 45 days (ECF 30 at 3, Response to Motion to Stay). But, defendants also reviewed the matter of plaintiff's failure to provide discovery responses. The Court stayed the case until June 2, 2014. ECF 32, Order.

Mr. Warner continued to have difficulties retaining new counsel and, at the request of the parties, the Court granted further extensions. *See* ECF 35, Marginal Order of June 4, 2014 Approving Joint Request for Time to File Status Report; ECF 37, Marginal Order of June 11, 2014 Approving Status Report. On June 17, 2014, Mr. Warner again wrote to the Court to

request a further 30-day extension. ECF 38. Defendants agreed to the extension, but requested dismissal of the case, with prejudice, "if the Plaintiff does not respond fully and completely to the outstanding discovery by the end of th[e] 30-day extension . . . ." ECF 39 at 1-2. By Order of June 19, 2014, the Court stayed the case until July 18, 2014. ECF 40. But, Judge Russell also said, in relevant part: "By consent of the parties, . . . no further extensions will be granted and, if Mr. Warner fails to provide full and complete responses to the outstanding discovery requests by July 18, 2014, the case will be dismissed with prejudice." *Id.* at 1. He also directed the parties to submit a status report by July 21, 2014, "advising the Court as to whether Ms. Warner has complied with the outstanding discovery requests. . . ." *Id.*

On July 21, 2014, defendants submitted a status report. ECF 41. It said: "On July 18, 2014, at 11:59 PM, Plaintiff sent his response to **one** of Defendants' outstanding discovery requests. None of the other five outstanding requests, nor any accompanying documentation, were sent until the following day." *Id.* at 1 (emphasis in original). At the time of the status report, Mr. Warner apparently remained self-represented. Defendants "request[ed] an extension to file a Proposed Modified Scheduling Order until Tuesday, July 29, 2014," *id.* at 2, so that defendants' counsel could "reach out to the Plaintiff to discuss a proposed schedule." *Id.* at 1-2. By Order of July 22, 2014, the Court granted defendants' motion for a further extension. ECF 42.

Mr. McGee spoke by telephone with Mr. Warner on July 24, 2014. *See* ECF 89-4 at 1, email from McGee to Warner on July 24, 2014 (referencing "our telephone conversation this afternoon"). In an email to Mr. Warner later on July 24, 2014, Mr. McGee said: "[W]e have scheduled your deposition for August 8th. A Notice of Deposition confirming this is attached."

*Id.*; *see id.* at 3-4, Notice of Deposition dated July 24, 2014. Mr. McGee's email continued, *id.* at 1:

> As I also discussed with you this afternoon, your responses to Defendants' written discovery requests are deficient, incomplete and nonresponsive in a number of respects. We will give you an opportunity to remedy those deficiencies before raising the matter with the Court, but the deficiencies must be remedied and you must provide full and complete responses to all the discovery requests by August 4th. We will send you a letter tomorrow identifying the deficiencies that must be remedied.

In a ten-page letter from McGee to Warner dated July 25, 2014, McGee identified multiple interrogatories and document requests containing alleged "deficiencies" that he wanted plaintiff to "promptly remedy." ECF 89-5 at 1. He stated that "[t]ime is of the essence," and reiterated: "We have scheduled your deposition for August 8, 2014, and you remedy [sic] the above-described deficiencies and provide full and complete responses to all the interrogatories and document requests four days before your deposition, by August 4, 2014." *Id.* at 10.

On July 28, 2014, Eden Brown Gaines, Esquire advised Mr. McGee by email that she would be "entering a notice of appearance on behalf of Mr. Warner later today." ECF 89-6 at 1; *see* ECF 43, Notice of Apearance [sic] of Counsel. Ms. Gaines wrote: "Mr. Warner forwarded the discovery letter sent from your firm. I also understand from Mr. Warner and my cursory review of your client's discovery responses that there are deficiencies in your client's responses. I would like to schedule a later time to discuss both parties' discovery responses . . . ." ECF 89-6 at 1. The email continued, *id.*:

> Finally, I understand from Mr. Warner that you intend to take his deposition on August 8th. I will not be available on the 8th and it may be that we need to resolve the issues with written discovery prior moving [sic] forward to a deposition schedule. It is my preference to take all necessary depositions close together, but I certainly can be flexible in this regard. We can discuss a good block of time for depositions during our call.

The parties filed status reports on July 29, 2014. ECF 44, Plaintiff; ECF 45, Defendants. They also filed a Joint Motion to Modify Scheduling Order (ECF 46), which sought, *inter alia*, to extend the discovery deadline until December 31, 2014. *Id.* at 2. By Order of August 4, 2014, the Court lifted the stay and approved the Joint Motion to Modify Scheduling Order. ECF 47.

On August 29, 2014, the parties filed a Joint Motion to Stay Discovery and Refer to Mediation. ECF 51. They said: "Having exchanged sufficient discovery to facilitate the discussion of a possible resolution to the issues raised by the Complaint, and in order to avoid the expense of continuing litigation, the Parties believe it would be valuable to explore settlement at this stage and believe that settlement negotiations would benefit from Court-supervised ADR." *Id.* ¶ 6. By Order of September 2, 2014, the Court granted the Joint Motion to Stay Discovery and Refer to Mediation. ECF 52. The Order provided, in relevant part: "If necessary, within seven days of the settlement conference, the parties shall file a proposed amended scheduling order." *Id.* at 1. A settlement conference was held on October 7, 2014 (*see* ECF 54, Order Scheduling Settlement Conference), but it was not successful. Notwithstanding the Court's Order of September 2, 2014, which directed the parties to file a proposed amended scheduling order "within seven days of the settlement conference" (ECF 52 at 1), no proposed amended scheduling order was docketed.

On January 5, 2015, defendants filed a Motion to Dismiss or in the Alternative for Other Relief for Plaintiff's Failure to Respond to Discovery. ECF 58. They objected to "Plaintiff's failure to serve full and complete responses to Defendants' discovery," *id.* at 1, and sought dismissal pursuant to this Court's Order of June 19, 2014 (ECF 40). *See* ECF 58 at 1-2. By Order of January 20, 2015 (ECF 60), the Court granted the Consent Motion for an Enlargement of Time in which to Respond to Defendants' Motion to Dismiss (ECF 59). On January 27, 2015,

plaintiff filed a combined Opposition to Defendants' Motion to Dismiss and Motion to Compel. ECF 61. Defendants subsequently filed a Reply in Further Support of their Motion to Dismiss (ECF 64) and an Opposition to Plaintiff's Motion to Compel (ECF 65).

Thereafter, on February 19, 2015, this case was reassigned from Judge Russell to me. By Order of February 20, 2015, I referred the case to Magistrate Judge Stephanie Gallagher to resolve all discovery disputes. ECF 67. Following supplemental briefing by plaintiff (ECF 72; *see* ECF 70, Order), Judge Gallagher issued her Report and Recommendations (the "R and R") on May 8, 2015. ECF 73. No objections were filed, and I adopted the R and R by Order of May 26, 2015. ECF 75. In particular, I granted in part and denied in part Defendants' Motion to Dismiss (ECF 58). ECF 75 at 2. I found that Mr. Warner had failed to show good cause for his failure to assert timely objections to defendants' discovery requests, and thereby waived all grounds (other than privilege) for objecting to these discovery requests. But, I determined that Mr. Warner's continued assertion of these objections did not violate the Court's Order of June 19, 2014 (ECF 40). ECF 75 at 2. On that basis, I ordered Mr. Warner to produce "his supplemented, reorganized discovery responses within 15 days from the date of docketing of this Order." *Id.* I also ordered the parties to confer and submit a new Scheduling Order. *Id.* at 3.

The parties filed a proposed modification to the Scheduling Order on June 5, 2015 (ECF 76), which I approved, in part, by Order of June 5, 2015 (ECF 77), extending the discovery deadline until September 14, 2015. On June 17, 2015, plaintiff notified the Court that, pursuant to my Order of May 26, 2015 (ECF 75), he served amended answers to the defendant's interrogatories on June 8, 2015. ECF 78 at 1.

After considerable discussion, on August 12, 2015, the parties scheduled Mr. Warner's deposition for August 28, 2015. *See* ECF 89-9 at 1, email from Gaines to McGee on August 12, 2015; ECF 89-9 at 1, email from McGee to Gaines on August 13, 2015. Then, on August 15, 2015, defendants issued a Notice of Deposition Duces Tecum to the Custodian of Records for Sprint Corporation ("Sprint"). ECF 85-6 at 1-8. Defendants subpoenaed, *inter alia*, "[a]ny and all sworn statements by James O. Warner . . . "; "Mr. Warner's complete personnel file . . . "; and "[a]ny and all records of counseling or discipline, up to and including any and all performance plan(s), demotion(s) and/or termination of Mr. Warner . . . ." *Id.* at 2.

At Mr. Warner's deposition on August 28, 2015, Mr. McGee asked Mr. Warner about an earlier employment discrimination action that he had brought against Sprint, his former employer, and the circumstances surrounding his departure from Sprint. ECF 89-10, Excerpted Transcript of Videotaped Deposition., at 2-4.[2] The following exchange is relevant, *id.*:

> [MCGEE:] Okay. When did you stop working for Sprint?
>
> [WARNER:] In or around I think, everything was settled around 2005, 2004. Something like that.
>
> [MCGEE:] No, I'm not asking when it was settled. When did you stop working with Sprint?
>
> [WARNER:] I don't recall. I don't have that information in front of me.
>
> [MCGEE:] Were you still technically employed by Sprint at the time that you sued them?
>
> [WARNER:] I can't recall.

---

[2] Mr. Warner brought an employment discrimination suit against Sprint Corporation; Sprint PCS Limited Partnership; Sprint Communications Company L.P.; and two of Sprint Communications Company L.P.'s employees, Kathy Lorenz, and Brian McIntee, in the Circuit Court for Prince George's County, Maryland, on December 30, 2002. Defendants removed that case to this Court on May 27, 2003. *See* DKC-03-cv-01559. By Memorandum and Order of June 16, 2004, Judge Chasanow granted summary judgment for defendants. ECF 33; ECF 34. Mr. Warner appealed to the Fourth Circuit, which dismissed the appeal. ECF 39.

[MCGEE:] Okay.  Were you fired by Sprint?

[WARNER:]  I can't recall that either.

[MCGEE:] How is it that you --why aren't you currently working for Sprint?

[WARNER:]  I guess when I filed the lawsuit – again, I'm guessing.  I don't want to guess.  I don't know what the actual information was.  It was time, it was time to move on at that point after the lawsuit.

[MCGEE:] Okay.  But I'm asking you why you stopped working for Sprint?

[WARNER:]  I don't recollect exactly why.

[MCGEE:] Okay.  Did you quit?

[WARNER:]  Don't recollect.

[MCGEE:] Were you fired?

[WARNER:] Don't recollect that either.

[MCGEE:] So--

[WARNER:] It's all in the documentation.

[MCGEE:] Well, yeah, I mean, so you don't even know whether you were fired or quit to tell me?

MS. GAINES: Objection.  Asked and answered.  He said he doesn't remember.

[WARNER:] Yeah, it was many years ago.  I don't recall.

[MCGEE:] Well, don't you think you might -- if you got fired from a job that you would remember that.

MS. GAINES: Objection.  Obviously he doesn't because he just said three times he doesn't remember.

[MCGEE:]  Have you been fired from a lot of jobs?

[WARNER:] No, I've only had a total of I want to say three jobs in my young adult life.

***

[MCGEE:]  When you, who did you interview with at Verizon Wireless?

[WARNER:] Mark Harris.

[MCGEE:]  Did you talk at all about what happened at Sprint?

[WARNER:] Not that I can recollect. Maybe so.  It's possible.

On September 21, 2015, in response to defendants' subpoena to Sprint (ECF 85-6 at 1-8), Sprint provided defendants with personnel records related to Mr. Warner.  ECF 89-11 at 1-2, Letter from Sprint's Legal Department (Sharon Bundy) to Puja Gupta dated Sept. 21, 2015 (objecting, in part, to defendants' subpoena).  An "Involuntary Separation Update" that Sprint provided states that Mr. Warner involuntarily separated from Sprint on November 8, 2002.  ECF 89-11 at 3-4.  However, in Mr. Warner's VZW employment application dated April 8, 2005, Mr. Warner listed "career change" as the "Reason for Leaving" Sprint.  ECF 85-3 at 3, VZW Employment Application for James O. Warner dated Apr. 8, 2005.

## II.    Discussion

Fed. R. Civ. P. 15(a)(2) states, in part: "The court should freely give leave [to amend] when justice so requires."  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc); *Simmons v. United Mortgage & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).  "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court . . . ."  *Foman*, 371 U.S. at 182.

"Delay [in the case's resolution] alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation omitted).  "Rather, the delay must be accompanied by prejudice, bad faith, or futility."  *Id.* (citation omitted); *see Simmons, LLC*, 634 F.3d at 769; *Equal Rights Center v. Niles Bolton Assocs.,* 602 F.3d 597, 603

(4th Cir. 2010); *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

### a. Prejudice

Plaintiff contends that "allowing the amendment after the close of discovery will prejudice Plaintiff . . . ." ECF 85 at 1, Opposition. He argues: "[T]he case is old and has been languishing. The time to move towards trial is upon us. Continued delay prejudices Plaintiff." *Id.* at 8. In particular, plaintiff maintains that if defendants are permitted to amend their answer to include an affirmative defense under the after-acquired evidence doctrine he may seek to "proffer evidence indicating that [VZW] would not have terminated him for providing false information on his employment application." *Id.* at 7. To do so, plaintiff maintains, he "would need to reopen discovery to depose the hiring manager and seek comparator evidence concerning other employees outside his protected class who provided false information on their applications and were not terminated." *Id.*

Defendants counter: "Plaintiff will not suffer any prejudice as a result of the Amended Answer adding the after-acquired evidence defense." ECF 89 at 10, Reply. First, defendants argue that they have already "provided Plaintiff with documents received in response to their subpoena to Sprint," *id.* at 10-11, "[a]nd, to the extent there are any additional documents to support the after-acquired evidence defense, those documents will be produced." *Id.* at 11. Second, defendants contend that "potential witnesses with knowledge about Defendants' affirmative defense of after-acquired evidence have been provided to Plaintiff in Defendant VZW's Supplemental Answers to Plaintiff's First Set of Interrogatories." *Id.* And third, defendants submit: "Plaintiff suffers no prejudice because he is not precluded from conducting additional depositions regarding Defendants' after-acquired evidence defense." *Id.* Defendants

maintain: "If Plaintiff wishes to re-open discovery to conduct limited additional depositions on Defendants' after-acquired evidence defense, Defendants have no objection." *Id.*

"Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." 6 Wright & Miller, Federal Practice and Procedure (2004 & 2015 Supp.) § 1487 at 701 ("Wright & Miller") (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971); *United States v. Hougham*, 364 U.S. 310 (1960)). "[I]f the court is persuaded that no prejudice will accrue, the amendment should be allowed." 6 Wright & Miller § 1487 at 701.

"[P]rejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party, but that basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). In *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439 (4th Cir. 2011), the Court said: "'Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing . . . . [T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant . . . .'" (quoting *Laber*, 438 F.3d at 427).

No trial date has been set. The proposed defense is not particularly complicated, legally or factually. And, defendants state: "If Plaintiff wishes to re-open discovery to conduct limited additional depositions on Defendants' after-acquired evidence defense, Defendants have no objection." *Id.* Therefore, permitting defendants to amend their answer at this time will not prejudice plaintiff, particularly given that much of the delay was occasioned by plaintiff.

### b. Bad faith

If a court "determines that the amendment was asserted in bad faith . . . the court may not allow the amendment . . . ." 6 Wright & Miller § 1487 at 748-55. "The court also may consider the good faith of the party seeking the amendment." *Id.* § 1487 at 748-49. A good faith amendment must advance a colorable legal argument. *See Laber*, 438 F.3d at 428 ("[T]here is no indication that Laber's omission from his original complaint of the legal theory he now seeks to pursue was in bad faith . . . ."); *see also Peamon v. Verizon Corp.*, 581 F. App'x 291, 292 (4th Cir. 2014) (per curiam) ("Because it is clear that, in seeking to amend his complaint, Peamon merely sought to artificially inflate his damages in order to obtain subject matter jurisdiction, we conclude that Peamon's motion to amend was filed in bad faith . . . ."). In addition, "the further the case progresse[s] before judgment [is] entered, the more likely it is that . . . a court will find bad faith . . . ." *Laber*, 438 F.3d at 427; *see Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987) ("[T]here was no showing of purposeful dilatoriness or bad faith by the plaintiffs in the short delay in filing their motion to amend after they became apprised of the possible claim"); 6 Wright & Miller § 1487 at 755 ("When the court inquires into the good faith of the moving party, it typically will take account of the movant's delay in seeking the amendment.").

According to plaintiff, "Defendants have long known of Plaintiff's prior Sprint litigation concerning his separation and discrimination claims and have had his application in their hands since 2005." ECF 85 at 8, Opposition. Warner submits: "Defendants' bad faith is apparent in the timing of its motion for leave, the misrepresentations made to this Court, and the evidence concerning the underlying merits of the affirmative defense." *Id.*

In particular, plaintiff contends that "the idea that Plaintiff provided false information on his employment application did not spring from his deposition." *Id.* Plaintiff maintains that defendants moved to amend their answer in bad faith by misrepresenting that defendants attempted to schedule Plaintiff's deposition before August 2015. *Id.* at 8-9. Moreover, plaintiff argues that "there is no evidence or suggestion that Plaintiff provided false information about anything on his [VZW] application." *Id.* at 9. Plaintiff also submits: "Defendants' conspicuous failure to support the allegations contained in the motion for leave to amend with evidence or citation to the record is indicative of bad faith." *Id.*

Defendants insist that they "have not acted in bad faith." ECF 89 at 12, Reply. They assert: "Plaintiff's focus on the length of time that Defendants have known about the Sprint Lawsuit is misplaced. . . . Defendants, in spite of their diligent efforts, were not able to discover any information *from Plaintiff* about whether he disclosed his termination from Sprint or any of the circumstances of his termination from Sprint to VZW *when he applied* for a position with VZW . . . ." *Id.* at 13 (emphasis in original). According to defendants, they attempted to schedule Mr. Warner's deposition "as early as March 7, 2014." *Id.* at 17 (citing ECF 89-3, Letter from McGee to Warner dated Mar. 7, 2014; ECF 89-4, email from McGee to Warner on July 24, 2014). Defendants also deny that they misrepresented the substance of Mr. Warner's deposition testimony. ECF 89 at 12-13, Reply. Citing records subpoenaed from Sprint (ECF 89-11 at 3-4, Involuntary Separation Update), defendants maintain that these records, combined with Mr. Warner's deposition testimony (ECF 89 at 13) suggest that Mr. Warner indeed misrepresented his employment history in his application for employment with VZW. *See* ECF 89 at 12-13.

As the procedural history demonstrates, much of the delay in this case is attributable to Mr. Warner, who was self-represented from March 4, 2014 until July 28, 2014, and who delayed

in providing discovery responses. Once Ms. Gaines entered her appearance, the Court granted a further extension to permit her to familiarize herself with the case. *See* ECF 44 at 2, Status Report ("In entering my appearance, I contemplated that the Court would allow counsel some time to 'get up to speed' on the status of the case."); ECF 47, Order. The parties filed a joint motion to stay discovery (ECF 51) to permit them to pursue a settlement conference, which was granted (ECF 52). Yet, the parties indicated a willingness to pursue that process more than half a year earlier, but it was delayed because of the withdrawal of Mr. Warner's original attorney. *See* ECF 15, Order Referring Case to Magistrate Judge Charles B. Day for Settlement; ECF 25, Order Granting Amended Motion to Withdraw.

Nor is there support in the record for plaintiff's contention that defendants "did not make arrangements to [take plaintiff's deposition] until after August 3, 2015." McGee raised the prospect of Warner's deposition with Warner in a letter dated March 7, 2014. ECF 89-3 at 1 ("[W]e need to discuss some logistics regarding proceeding with the case, including . . . scheduling your deposition."). On July 24, 2014, McGee provided Warner with a Notice of Deposition, seeking to depose Warner on August 8, 2014. ECF 89-4 at 3-4. After Gaines entered her appearance on July 28, 2014 (ECF 43), she sought a delay of Warner's deposition, then set for August 8, 2014. *See* ECF 89-6 at 1, email from Gaines to McGee dated July 28, 2014. Gaines wrote: "I will not be available on the 8th [of August, 2014] and it may be that we need to resolve the issues with written discovery prior moving [sic] forward to a deposition schedule. It is my preference to take all necessary depositions close together . . . ." *Id.*

In addition, it appears that the parties sought to resolve written discovery before "moving forward to a deposition schedule." As noted, on June 8, 2015, pursuant to my Order of May 26, 2015 (ECF 75), plaintiff served amended answers to defendants' interrogatories. ECF 78 at 1.

Defendants revisited the issue of Mr. Warner's deposition on July 29, 2015. ECF 89-7, email from McGee to Leonard on July 29, 2015 ("As we also discussed [during our telephone conversation this morning], we need to schedule Mr. Warner's deposition within the next couple of weeks, so please provide me with possible dates for the deposition.") Following subsequent communications between counsel (*see* ECF 89-9 at 1, email from Gaines to McGee on August 12, 2015; ECF 89-9 at 1, email from McGee to Gaines on August 13, 2015), defendants deposed Warner on August 28, 2015. ECF 89-10, Excerpted Transcript of Warner's Videotaped Deposition.

Plaintiff also contends that "the idea that Plaintiff provided false information on his employment application did not spring from his deposition." *Id.* He asserts, *id.*: "Defendants have long known of Plaintiff's prior Sprint litigation concerning his separation and discrimination claims and have had his application in their hands since 2005." *Id.*

Defendants maintain that they learned new information during Mr. Warner's deposition on August 28, 2015, which gave rise to a good faith basis to assert an affirmative defense. *See* ECF 89 at 5, Reply. Defendants filed their Motion shortly thereafter, on September 14, 2015. ECF 79. They argue, ECF 89, at 6, Reply:

> Though Defendants suspected Plaintiff may have made misrepresentations to VZW about his prior employment with Sprint and the circumstances of and reasons that his employment with Sprint ended, Defendants could not have known the plausibility of the affirmative defense they now seek to amend their Answer to include until they had an opportunity to question Plaintiff and learn whether Plaintiff denied that he was fired from Sprint. Certainly, Defendants had Plaintiff's employment application to VZW and knew what Plaintiff stated as the reason for his employment with Sprint ending in the application, but Defendants did not know whether Plaintiff was going to claim that during his interview with VZW, he told VZW the full and true story. Before Defendants could assert the defense of after-acquired evidence and accuse Plaintiff of making misrepresentations to VZW, Defendants needed to know from him whether he did disclose the true circumstances of his departure from Sprint during his interview with VZW.

As defendants note, neither Mr. Warner's VZW employment application nor his personnel records from Sprint provided information about the content of his interview with VZW. *See* ECF 89 at 6, Reply. Even if defendants anticipated the defense, they were entitled to verify their factual basis through the deposition of Mr. Warner. The content of Mr. Warner's deposition gave rise to defendants' "good faith basis to assert a plausible defense under the after-acquired evidence doctrine." ECF 89 at 5, Reply.

In sum, in light of the procedural history, there is no merit to plaintiff's contention that "Defendants delayed more than 19 months from the start of discovery in seeking information confirming or revealing the information contained in Plaintiff's application as false." ECF 85 at 6, Opposition. I am also unpersuaded that "Defendants' bad faith is apparent in the timing of its [sic] motion for leave . . ." to amend its answer. ECF 85 at 8, Opposition.

### c. Futility

Plaintiff maintains that defendants' proposed amendment is futile because "the doctrine of after-acquired evidence of wrongdoing neither serves to bar to [sic] Plaintiff's discrimination claims nor Plaintiff's recovery of damages." ECF 85 at 9, Opposition. Plaintiff adds that "the amendment is futile because it is unsupported by any evidence." *Id.* at 10.

Defendants counter: "It is not the job of the Court to evaluate the merits of the case in order to determine whether Defendants' amendment would not be futile." ECF 89 at 15, Reply. They posit: "Defendants' after-acquired evidence defense is not futile just because it does not serve as a complete bar to Plaintiff's recovery of damages." *Id.* Rather, defendants maintain that "Plaintiff could still be precluded from recovering some or all damages . . . ." *Id.* at 16.

"The after-acquired evidence doctrine concerns the effect of evidence of employee misconduct acquired by the employer after the employee has been terminated for a

discriminatory reason." *Miller v. AT & T Corp.*, 250 F.3d 820, 837 (4th Cir. 2001). It "balances the need to enforce national employment policy by deterring and punishing employer misconduct, while taking 'due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing.'" *Id.* at 837 (quoting *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 361 (1995)).

An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson,* 785 F.2d at 510 (citations omitted). The Fourth Circuit has explained the after-acquired evidence doctrine in *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1238 (4th Cir. 1995) (alternations in *Russell*):

> In *McKennon* [*v. Nashville Banner Publishing Company*, 513 U.S. 352 (1995)]*,* the plaintiff had filed suit against her employer, the Nashville Banner Publishing Company ("the Banner"), under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* At McKennon's deposition, the Banner learned that she had removed from its offices certain confidential documents, supposedly as "insurance" and "protection" in case she was fired because of her age. *McKennon,* 513 U.S. at [355], 115 S.Ct. at 883. Both the district court and Sixth Circuit held that the after-acquired evidence of employee misconduct precluded recovery by the plaintiff. For the purpose of summary judgment, the Supreme Court assumed that the Banner had discriminated against McKennon on the basis of age. *Id.* The Court's further premise was "that the misconduct revealed by the deposition was so grave that McKennon's immediate discharge would have followed its disclosure in any event." *Id.*

> The *McKennon* Court held that after-acquired evidence of wrongdoing that would have resulted in termination did not bar all relief for an earlier violation of the ADEA, but operated to limit the relief available. *Id.* at [356] – [363], 115 S.Ct. at 884–87. According to the unanimous opinion, "it would not accord with [the recovery scheme underlying the ADEA and Title VII] if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act." *Id.* at [358], 115 S.Ct. at 884. The Court noted, however, that the ADEA and Title VII "do not constrain employers from exercising significant other prerogatives and discretions in the course of the hiring, promoting, and discharging of their employees." *Id.* at [361], 115 S.Ct. at 886.

Under *McKennon,* in order for an employer to invoke the defense successfully, "it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* at [362] – [63], 115 S.Ct. at 886–87; *accord Ricky v. Mapco, Inc.,* 50 F.3d 874, 876 (10th Cir. 1995). The "general rule" when a discriminating employer meets that burden is that "neither reinstatement nor front pay is an appropriate remedy." *McKennon,* 513 U.S. at [361-62], 115 S.Ct. at 886. Instead, "[t]he beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered." *Id.* The *McKennon* court also made clear that its analysis applied not only to claims under the ADEA, but to those under Title VII as well. *See id.* at [358], 115 S.Ct. at 884 (noting the "common substantive features" and "common purpose" of the two schemes); *Wehr v. Ryan's Family Steak Houses, Inc.,* 49 F.3d 1150, 1153 (6th Cir.1995) ("[W]e are persuaded by [*McKennon* 's] language that it applies equally to a Title VII claim.").[]

I am unpersuaded by plaintiff's argument that defendants' proposed amended answer, to include the defense based on after-acquired evidence, is futile because it "would [not] result in complete claim preclusion or a bar to recovery of damages . . . ." ECF 85 at 10, Opposition. To be sure, plaintiff correctly characterizes the effect of the after-acquired evidence doctrine on damages—it does not "bar all relief" but it "operate[s] to limit the relief available." *Russell*, 65 F.3d at 1238. But, plaintiff cites no authority for his contention that an affirmative defense is futile if "would [not] result in complete claim preclusion or a bar to recovery of damages . . . ." ECF 85 at 10, Opposition. To the contrary, 5 Wright & Miller, § 1273 at 614-15, states (emphases added):

> The obligation to plead affirmative defenses *is not limited to complete defenses*. This seems to be the intendment of the language in Federal Rule 8(c) that "a party shall set forth … any other matter constituting an avoidance or affirmative defense." Thus, *partial defenses should be pleaded affirmatively*, whether they are among the defenses enumerated in Federal Rule 8(c) or fall within the catchall clause, since in essence they introduce new matter into the case.[] *The same conclusion follows for matters that tend to mitigate damages*.

Moreover, in *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 299 (4th Cir. 2009), an employment discrimination case concerning violations of the FMLA, the Court concluded "that the [district]

court did not abuse its discretion in allowing [the defendant] to amend its Answer" to assert a defense based on after-acquired evidence where the defendant discovered the factual basis for the defense as a result of the plaintiff's deposition testimony. Defendants' motion for leave to amend their answer to include an after-acquired evidence defense is not futile simply because it would not prevent Mr. Warner from all recovery.

An amendment is also futile if it would fail to withstand a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Perkins v. United States,* 55 F.3d 910, 917 (4th Cir. 1995); *see Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008). Although *Perkins*, 55 F.3d at 917, dealt with a motion for leave to amend a complaint, "[t]he general rules of pleading that are applicable to the statement of a claim also govern the statement of affirmative defenses under Federal Rule 8(c)." 5 Wright & Miller § 1274 at 616.

To date, neither the Supreme Court nor the Fourth Circuit has indicated whether the heightened pleading standard of *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), applies to affirmative defenses. *Cf. Walters v. Performant Recovery, Inc.*, 14-CV-01977 (VLB), 2015 WL 4999796, at *1 (D. Conn. Aug. 21, 2015) ("[T]here is much disagreement among courts … regarding the standards under which … motions [to strike] are to be resolved."). However, several judges in this District have determined that *Twombly* and *Iqbal* are applicable to the pleading of affirmative defenses. *See*, *e.g.*, *Alston v. Equifax Information Services, LLC*, GLR-13-00934, 2014 WL 580148, at *2 (D. Md. Feb. 11, 2014) (Russell, J.); *Blind Indus. and Servs. of Md. v. Route 40 Paintball Park*, WMN-11-03562, 2012 WL 2946688, at *3 (D. Md. July 17, 2012) (Gallagher, M.J.); *Aguilar v. City Lights of China Restaurant, Inc.*, DKC-11-02416, 2011 WL 5118325, at *1-4 (D. Md. Oct. 24, 2011) (Chasanow, J.); *Bradshaw v.*

*Hilco Receivables, LLC,* 725 F. Supp. 2d 532, 536-37 (D. Md. 2010) (Bennett, J.); *Topline Solutions, Inc. v. Sandler Sys., Inc.*, L-09-03102, 2010 WL 2998836, at *1 (D. Md. July 27, 2010) (Legg, J.). Conversely, other judges in this District have concluded that *Twombly* and *Iqbal* are not clearly applicable in considering a motion to strike, based on differences in the language of Fed. R. Civ. P. 8(a), which applies to claims for relief, and Rule 8 subsections (b) and (c), which apply to defenses and affirmative defenses, respectively. *See*, *e.g.*, *LBCMT 2007-C3 Urbana Pike, LLC v. Sheppard*, 302 F.R.D. 385, 387 (D. Md. 2014) (Bredar, J.) (declining to apply *Twombly* and *Iqbal* standard); *Lockheed Martin Corp. v. United States*, 973 F. Supp. 2d 591, 593 (D. Md. 2013) (Williams, J.); *Gardner v. Montgomery Cnty. Teachers Fed. Credit Union*, JFM-10-02781 (D. Md. Jan. 7, 2011) (ECF 11).

There are differences in the language of Rule 8(a), Rule 8(b), and Rule 8(c), arguably suggesting that the plausibility standard is inapplicable to affirmative defenses. For example, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," while Rule 8(b)(1)(A) merely requires a party to "state in short and plain terms its defenses to each claim." Nor does Rule 8(c) mention a factual showing. Nevertheless, what the court said in *Palmer v. Oakland Farms, Inc.*, 5:10CV00029, 2010 WL 2605179, at *4 (W.D. Va. June 24, 2010), resonates here:

> On its face, the argument accepted by the majority of courts extending the "plausibility" pleading standard of *Twombly* and *Iqbal* to defensive pleadings is compelling. As the plaintiff argues, it neither makes sense nor is it fair to require a plaintiff to provide the defendant with enough notice that there is a plausible, factual basis for her claim under one pleading standard and then permit the defendant under another pleading standard simply to suggest that some defense may possibly apply in the case.

Indeed, "it would be incongruous and unfair to require a plaintiff to operate under one standard and to permit the defendant to operate under a different, less stringent standard."

*Topline Solutions, Inc.*, 2010 WL 2998836, at *1. Moreover, "[b]oilerplate defenses clutter the docket and, further, create unnecessary work. . . . Rule 15 allows for appropriate amendments and counsel should therefore feel no need . . . to window-dress pleadings early for fear of losing defenses later." *Safeco Ins. Co. of Am. v. O'Hara Corp.*, 08-CV-10545, 2008 WL 2558015, at *1 (E.D. Mich. June 25, 2008).

But, I need not resolve the issue here as to the applicability of *Twombly/Iqbal*. This is because defendants have satisfied that standard.

I am unpersuaded by plaintiff's contention that defendants' proposed amended to include an after-acquired evidence defense "is futile because it is unsupported by any evidence." ECF 85 at 10, Opposition. "At a minimum . . . some statement of the ultimate facts underlying the defense must be set forth, and both its non-conclusory factual content and the reasonable inferences from that content, must plausibly suggest a cognizable defense available to the defendant." *Palmer*, 2010 WL 2605179 at *5

Defendants assert in their proposed Twenty-First Defense: "'In applying for employment with Defendant, Plaintiff provided false information relating to his prior employment.'" ECF 79-2 at 24. Further, defendants allege: "Had [VZW] been aware of Plaintiff's misrepresentations at the time Plaintiff applied for employment, [VZW] would not have hired Plaintiff. If [VZW] had become aware of Plaintiff's misrepresentations after Plaintiff had been hired, Plaintiff's employment would have been terminated for providing false information during the hiring process." ECF 79 at 2, Motion. Defendants' proposed factual recitation is hardly expansive. But, defendants have set forth facts sufficient to state a cognizable defense.

### III.    Conclusion

For the foregoing reasons, I will grant defendants' Motion for Leave to File an Amended Answer.

A separate Order follows, consistent with this Memorandum.

Date:   November 9, 2015                    _____/s/_____
                                            Ellen Lipton Hollander
                                            United States District Judge